UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ERC SPECIALISTS, a Utah limited liability company,<br><br>        Plaintiff,<br><br>v.<br><br>SCHOOLMATES, NFP,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (DOC. NO. 9) AND DISMISSING ACTION WITHOUT PREJUDICE**<br><br>Case No. 2:24-cv-00727<br><br>Magistrate Judge Daphne A. Oberg |

ERC Specialists brought this action against Schoolmates, NFP in Utah state court, asserting claims for breach of contract and unjust enrichment.[1] After removing the case to federal court,[2] Schoolmates filed a motion to dismiss the case for lack of personal jurisdiction and improper venue.[3] The court heard oral argument on June 3, 2025.[4] Because ERC Specialists fails to establish this court's personal jurisdiction over Schoolmates, Schoolmates' motion is granted and the case is dismissed without prejudice.

---

[1] (*See* Compl., Doc. No. 2-2.)

[2] (*See* Notice of Removal, Doc. No. 2.)

[3] (Mot. to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the Alternative, Transfer Proceedings (Mot.), Doc. No. 9.) In the alternative, Schoolmates requests the case be transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1406, the statute permitting transfer to cure improper venue. (*Id.* at 7–8.)

[4] (*See* Doc. No. 35.)

## BACKGROUND

ERC Specialists is a Utah company which assists customers in applying for the employee retention tax credit.[5]  Schoolmates is a nonprofit corporation organized under the laws of Illinois, whose sole business is to manage a charter school located in Chicago, Illinois.[6]

The parties dispute which company first initiated contact with the other. According to ERC Specialists, some of its customers request services by completing an application on its website, while others are referred through an "affiliate program."[7] ERC Specialists asserts that according to its records, "Schoolmates found and reached out to ERC Specialists directly through [its] website."[8]  Schoolmates, on the other hand, contends it was "solicited by representatives of ERC Specialists who were located in New Jersey and Texas."[9]  Schoolmates claims it did not "discover or ever reach out to ERC Specialists directly through ERC Specialists['] website."[10]

---

[5] (Compl. ¶ 8, Doc. No. 2-2.)  The employee retention tax credit is a refundable tax credit for certain eligible businesses and organizations affected by the COVID-19 pandemic.  *See Employee Retention Credit*, Internal Revenue Serv., https://www.irs.gov/coronavirus/employee-retention-credit [https://perma.cc/A7G2-XFJJ].

[6] (Ex. A to Def.'s Resp. to Opp'n to Def.'s Mot. to Dismiss (Reply), Counter-Aff. of David Ireland (Ireland Aff.) ¶¶ 2–3, Doc. No. 23-1.)

[7] (Ex. D to Opp'n to Def.'s Mot. to Dismiss (Opp'n), Aff. of Rocky Crofts (Crofts Aff.) ¶¶ 10–11, Doc. No. 15-4.)

[8] (*Id.* ¶ 14.)

[9] (Ex. A to Reply, Ireland Aff. ¶ 12, Doc. No. 23-1.)

[10] (*Id.* ¶ 18.)

Regardless of who initiated contact, ERC Specialists and Schoolmates ultimately entered into a contract for ERC Specialists to assist Schoolmates in applying for the employee retention tax credit.[11]  Under the contract, Schoolmates agreed to pay ERC Specialists fifteen percent of the tax credit issued.[12]  The contract contained a choice-of-law provision stating the agreement "will be governed and construed in all respects according to the laws of the State of Utah."[13]  The contract also included an escrow agreement under which the parties agreed to deposit tax credit funds with another company, Elite Contract Service, LLC, as escrow agent.[14]

According to ERC Specialists, Schoolmates sent it "numerous documents . . . to include in its filing for the [c]redit."[15]  ERC Specialists claims it performed its obligations under the contract and Schoolmates received the tax credit, but Schoolmates refused to pay the amount owed under the contract.[16]  ERC Specialists then filed this action for breach of contract and unjust enrichment in Utah state court, and Schoolmates removed the case to this court.

---

[11] (Compl. ¶¶ 3, 9, Doc. No. 2-2; Ex. A to Compl., Employee Retention Credit Services Agreement (Agreement), Doc. No. 2-2 at 8–17.)

[12] (*See* Compl. ¶ 10, Doc. No. 2-2.)

[13] (Ex. A to Compl., Agreement ¶ 14, Doc. No. 2-2 at 11.)

[14] (Ex. A to Compl., Agreement Ex. A, Doc. No. 2-2 at 12–14.)

[15] (Ex. D to Opp'n, Crofts Aff. ¶ 13, Doc. No. 15-4.)

[16] (Compl. ¶¶ 9, 11, 19–20, Doc. No. 2-2.)

## LEGAL STANDARDS

In disputes over personal jurisdiction, "the plaintiff has the burden of proving jurisdiction exists."[17]  Where, as here, there has been no evidentiary hearing and the motion is decided based on affidavits and written materials, the plaintiff need only make a prima facie showing that jurisdiction exists.[18]  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."[19] "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor."[20]  But "only the well [pleaded] facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."[21]

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."[22]  "The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court."[23]  Because Utah's long-arm statute extends jurisdiction "to the fullest extent" permitted by the Due Process Clause,[24] the personal jurisdiction analysis is "a

---

[17] *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004) (citation omitted).

[18] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[19] *Id.* (citation omitted).

[20] *Id.*

[21] *Id.*

[22] *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

[23] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017).

[24] Utah Code Ann. § 78B-3-201(3).

single due process inquiry."[25]  "Due process requires both that the defendant purposefully established minimum contacts with the forum State and that the assertion of personal jurisdiction would comport with fair play and substantial justice."[26]  An out-of-state defendant's contacts with the forum state may give rise to either general or specific jurisdiction.[27]  But where neither party contends general jurisdiction exists in this case, only specific jurisdiction is addressed.[28]

"Specific jurisdiction means that a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state."[29]  It "calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"[30]

"The minimum contacts test for specific jurisdiction encompasses two distinct requirements: first, that the out-of-state defendant must have purposefully directed its activities at residents of the forum state, and second, that the plaintiff's injuries must

---

[25] *Old Republic*, 877 F.3d at 903.

[26] *Id*. (internal quotation marks omitted).

[27] *Id.*

[28] (*See* Mot. 2 n.1, Doc. No. 9 (arguing the complaint fails to allege facts supporting general jurisdiction); Opp'n 2, Doc. No. 15 (arguing only that specific jurisdiction exists).

[29] *Old Republic*, 877 F.3d at 904.

[30] *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

arise out of defendant's forum-related activities."[31]  The Tenth Circuit recognizes three frameworks "for determining whether an out-of-state defendant's activities satisfy the purposeful direction requirement: (1) continuing relationships with forum state residents ('continuing relationships'); (2) deliberate exploitation of the forum state market ('market exploitation'); and (3) harmful effects in the forum state ('harmful effects')."[32]  ERC Specialists does not argue the market exploitation framework applies; accordingly, only the continuing relationships and harmful effects frameworks are discussed.

## ANALYSIS

ERC Specialists argues the minimum contacts test is met under both the continuing relationships framework and the harmful effects framework.[33]  As explained below, ERC Specialists has not demonstrated Schoolmates has minimum contacts with Utah sufficient to support specific jurisdiction under either framework.  Accordingly, Schoolmates' motion to dismiss is granted.

As an initial matter, the court addresses the parties' competing factual assertions regarding who initiated contact.  The parties provided conflicting affidavits on this issue.  At this stage, any factual disputes based on conflicting affidavits must be resolved in the plaintiff's favor.[34]  In other words, for purposes of this motion, the court accepts ERC

---

[31] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (citation modified).

[32] *Old Republic*, 877 F.3d at 905.

[33] (*See* Opp'n 6–10, Doc. No. 15.)

[34] *Wenz*, 55 F.3d 1503 at 1505.

Specialists' assertion that, based on its records, Schoolmates "found and reached out to ERC Specialists directly through [its] website."[35]

A. <u>The Continuing Relationships Test Is Not Met</u>

ERC Specialists first contends specific jurisdiction exists under the continuing relationships framework.  Courts often employ this framework to assess whether minimum contacts exist in contract cases.[36]  In doing so, they consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."[37]  For instance, assertion of jurisdiction is proper "over defendants who have purposefully reached out beyond their State and into another by . . . entering a contractual relationship that envisioned continuing and wide-reaching contacts in the forum State."[38]  And "[a]n out-of-state defendant's solicitations of or direct communications with forum state residents also

---

[35] (Ex. D to Opp'n, Crofts Aff. ¶ 14, Doc. No. 15-4.)  Schoolmates objects to this portion of Mr. Crofts' affidavit, claiming Mr. Crofts lacks personal knowledge, it constitutes hearsay, and lacks foundation.  (Reply 7, Doc. No. 23.)  However, this statement does not contain hearsay, and Mr. Croft attested that the facts in his affidavit were based on his personal knowledge.  (Ex. D to Opp'n, Crofts Aff. at 1, Doc. No. 15-4.)  Further, Mr. Crofts indicated this particular statement was based on Schoolmates' records (although the records themselves were not provided).  Where Mr. Crofts attested his statements are based on personal knowledge and he identified the basis for his knowledge, there are no grounds to exclude Mr. Crofts' statement at this stage.

[36] *Old Republic*, 877 F.3d at 905.

[37] *AST Sports Science, Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008) (quoting *Burger King*, 471 U.S. at 479).

[38] *Old Republic*, 877 F.3d at 905 (internal quotation marks omitted) (quoting *Walden*, 571 U.S. at 285).

7

provide 'some evidence' suggesting purposeful direction."[39]  But "an out-of-state resident's contract with a resident of the forum state is insufficient, standing alone, to create personal jurisdiction."[40]

ERC argues personal jurisdiction exists here because Schoolmates "purposefully availed itself of the protection and consequences of Utah law by contracting with a Utah company."[41]  Specifically, ERC Specialists asserts the following facts establish minimum contacts under this framework:

- Schoolmates "reached out" to ERC Specialists by filling out a questionnaire on its website;[42]

- the parties' contract makes clear that ERC Specialists is a Utah company;[43]

- the contract contains a Utah choice-of-law provision;[44]

---

[39] *Id.* at 905 (quoting *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005)).

[40] *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1230 (10th Cir. 2020) (citing *Burger King*, 471 U.S. at 478; *Benton*, 375 F.3d at 1077).

[41] (Opp'n 6, Doc. No. 15.)

[42] (*Id.*)

[43] (*Id.*, Facts ¶ 8.)

[44] (*Id.* at 7.)

- the contract required Schoolmates to sign an escrow agreement with Elite

  Contract Service, LLC (which ERC Specialists describes in its briefing as a

  Utah company, without providing supporting evidence);[45]

- ERC Specialists performed its own obligations under the contract in Utah;[46]

  and

- the same month the contract was signed, ERC Specialists received

  "numerous documents" from Schoolmates to support the application for the

  employee retention credit.[47]

These facts, accepted as true for purposes of this motion, are insufficient to

establish specific jurisdiction under the continuing relationships framework.  As noted,

the mere existence of a contract is insufficient to establish minimum contacts.[48]  ERC

Specialists has not demonstrated Schoolmates "enter[ed] a contractual relationship that

envisioned continuing and wide-reaching contacts in the forum State."[49]  Even

assuming Schoolmates initiated contact and affirmatively chose to contract with a Utah

---

[45] (*Id.*, Facts ¶ 4.)  ERC Specialists also states in its opposition that Schoolmates
assigned a special power of attorney to Mr. Crofts, a Utah resident.  (*Id.*, Facts ¶ 5.)
However, the power-of-attorney form provided by ERC Specialists references "Escrow
Specialists, Inc.," not Mr. Crofts, and the record contains no evidence regarding where
this company is located or incorporated.  (*See* Ex. C to Opp'n, Doc. No. 15-3.)

[46] (Opp'n, Facts ¶¶ 12–13, Doc. No. 15; Ex. D to Opp'n, Crofts Aff. ¶ 6, Doc. No. 15-4.)

[47] (Opp'n, Facts ¶ 6, Doc. No. 15.)

[48] *Burger King*, 471 U.S. at 478.

[49] *Old Republic*, 877 F.3d at 905 (internal quotation marks omitted).

company, the contract at issue was for a single tax credit application.  ERC Specialists has not alleged (or presented evidence of) any ongoing relationship between the parties.[50]  Although ERC Specialists claims Schoolmates sent "numerous documents," by ERC Specialists' own account, Schoolmates submitted them the same month the parties entered into the contract—to support the tax credit application.[51]  ERC Specialists offers no evidence of prior negotiations or ongoing communications between the parties.[52]  Further, any contacts between Schoolmates other Utah entities under the escrow agreement and power-of-attorney form were part of the same underlying transaction—they do not constitute "wide-ranging" contacts in Utah.

Additionally, the contract's Utah choice-of-law provision does not establish personal jurisdiction here.  While a choice-of-law provision "is a relevant factor when examining purposeful availment, 'such a provision standing alone [is] insufficient to confer jurisdiction.'"[53]  In the absence of an ongoing relationship between the parties, or

---

[50] *See CHG Cos. v. Medina Mem'l Hosp.*, No. 2:17-cv-00551, 2017 U.S. Dist. LEXIS 195192, at *6 (D. Utah Nov. 27, 2017) (unpublished) (finding no personal jurisdiction where the parties' contract was "the only contact that [the defendant] ha[d] with Utah," and the contract "did not envision an ongoing relationship with the forum").

[51] (Opp'n, Facts ¶ 6, Doc. No. 15.)

[52] *See Old Republic*, 877 F.3d at 910 (finding no personal jurisdiction under the continuing relationships framework, despite the existence of a legal relationship, based on "the absence of prior negotiations, long-term contractual commitments, or any significant course of dealing").

[53] *CHG Cos.*, 2017 U.S. Dist. LEXIS 195192, at *7 (quoting *Burger King*, 471 U.S. at 482).

other evidence of contacts in Utah beyond the single transaction at issue, the choice-of-law provision is insufficient to establish minimum contacts in this case.[54]

ERC Specialists relies on *Shannon's Rainbow, LLC v. Supernova Media, Inc.*[55] and *Pro Axess, Inc. v. Orlux Distribution, Inc.*,[56] but neither case supports a finding of personal jurisdiction here.[57]  *Shannon's Rainbow* involved a dispute over production, distribution, and ownership of a film.[58]  The court found personal jurisdiction existed where the defendants "signed multiple documents and wrote emails declaring their partnership with" a nonparty Utah entity; they were co-managers of another nonparty entity located in Utah; they negotiated and signed contracts with Utah choice-of-law provisions which were the basis of the action; they used property located in Utah to

---

[54] *Cf. Burger King*, 471 U.S. at 482 (finding a choice-of-law provision "combined with the 20-year interdependent relationship" between the parties "reinforced [the defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there").

[55] 683 F. Supp. 2d 1261 (D. Utah 2010).

[56] 428 F.3d 1270 (10th Cir. 2005).

[57] After the hearing, both parties filed a series of notices of supplemental authority. (*See* Doc. Nos. 26–34.)  None of the cases cited in these notices change the analysis.  While ERC Specialists identified a Utah state court order finding personal jurisdiction on similar facts, this decision is not binding and is inconsistent with this court's reading of Tenth Circuit precedent regarding due process requirements for personal jurisdiction.  (*See* Ex. A to Pl.'s Third Suppl. Authority, "Order Den. Def.'s Mot. to Dismiss," *ERC Specialists, LLC v. Land Care Mgmt. Servs.*, No. 240406291 (Utah Fourth Dist. Ct. Aug. 11, 2025), Doc. No. 34-1.)  Further, although not acknowledged by ERC Specialists, another Utah court recently dismissed a similar case brought by ERC Specialists for lack of personal jurisdiction.  *See* "Ruling on Mot. to Dismiss," Dkt. No. 41, *ERC Specialists, LLC v. South Pinellas Pool Supplies, Inc.*, No. 240402563 (Utah Fourth Dist. Ct. Dec. 3, 2024).

[58] 683 F. Supp. 2d at 1264.

"collateralize bridge financing for the project"; and the record contained an exhibit with 128 pages of emails from the defendants directed to the plaintiffs in Utah.[59]

The facts supporting jurisdiction in *Shannon's Rainbow* are distinguishable. Unlike *Shannon's Rainbow*, the relationship between the parties in this case involved a single tax credit application.  ERC Specialists has not shown any pattern of negotiations or ongoing communications between the parties outside this transaction.  ERC Specialists also has not demonstrated Schoolmates partners with or manages Utah entities or owns Utah property.  And while this case involves a contract with a Utah choice-of-law provision, the *Shannon's Rainbow* court noted the defendants in that case had negotiated more than twenty separate drafts of agreements containing a Utah choice-of-law provision[60]—facts absent here.  Accordingly, *Shannon's Rainbow* does not support ERC Specialists' position that the continuing relationships test is met in this case.

In *Pro Axess*, the court found specific jurisdiction based on a single contract between the parties where "fulfilling the contract required a continuing relationship based on the provision of services."[61]  The defendant, a distributor of sunglasses, contracted with a Utah corporation to "arrange for the manufacture and delivery of

---

[59] *Id.* at 1272–73.

[60] *Id.* at 1274.

[61] 428 F.3d at 1277.

28,000 sunglasses frames."[62]  The court found the defendant solicited and "specifically sought out" the Utah corporation because of its "long-standing business relationships with many manufacturers in Asia."[63]  The contract included services to be performed in Utah including "choosing a manufacturer for the sunglasses frames, arranging for rough handmade models to be made into machined prototypes, arranging the details for the manufacture of the frames at a plant in China, arranging for the inspection of the frames in Hong Kong, invoicing and coordinating the manufacturing process, and arranging for the shipping of the frames from Hong Kong to France."[64]  The court also noted the defendant and its agent "exchanged numerous faxes, letters, and phone calls with [the plaintiff] in Utah about the order itself and the potential for modifications to the order."[65]

Again, these facts are distinguishable.  Even assuming Schoolmates initiated contact via ERC Specialists' website, there is no evidence Schoolmates specifically sought out ERC Specialists, as a Utah corporation, for unique reasons.  And while the contract here involved services to be performed in Utah, these services were not comparable to the large-scale manufacturing deal in *Pro Axess*.  Unlike in *Pro Axess*, performance would not require an ongoing relationship or significant course of dealing. Further, ERC Specialists has not shown extensive communications with Schoolmates—

---

[62] *Id.* at 1274–75.

[63] *Id.* at 1277.

[64] *Id.*

[65] *Id.* at 1278.

like those in *Pro Axess*.  Accordingly, *Pro Axess* does not support ERC Specialists'
jurisdiction argument.

Where the contract here involved a single tax credit application, and there is no
evidence of an ongoing relationship or wide-ranging contacts in Utah, ERC Specialists
fails to establish Schoolmates has minimum contacts with Utah under the continuing
relationships framework.

   B.  The Harmful Effects Framework Does Not Apply

ERC Specialists next argues personal jurisdiction exists under the harmful effects
framework.[66]  This framework applies "when an out-of-state defendant's *intentional*
conduct targets and has substantial harmful effects in the forum state."[67]  Accordingly,
this framework generally applies to cases involving intentional torts.[68]  The harmful
effects test requires three elements: "(a) an intentional action, that was (b) expressly
aimed at the forum state, with (c) knowledge that the brunt of the injury would be felt in
the forum state."[69]

ERC Specialists notes the Tenth Circuit has applied this framework in cases
"where the internet is involved."[70]  It contends the framework is applicable here because

---

[66] (Opp'n 9–10, Doc. No. 15.)

[67] *Old Republic*, 877 F.3d at 907.

[68] *See id.* at 907–08.

[69] *Id.* at 907 (citation modified) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
514 F.3d 1063, 1072 (10th Cir. 2008).

[70] (Opp'n 9, Doc. No. 15 (citing *XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300,
1309 (10th Cir. 2024)).)

Schoolmates "reached out to ERC Specialists through the internet, [Schoolmates'] materials were sent to ERC Specialists over the internet, and the parties' agreement was signed using the internet."[71]  And it argues the harmful effects test is met because Schoolmates intentionally contracted with a Utah company, it intentionally failed to pay its obligation, its failure to pay was "directed at Utah," and it "undoubtedly knew that the brunt of its breach would be felt by ERC Specialists in Utah."[72]

Notwithstanding ERC's factual assertions, the harmful effects test does not apply here because ERC Specialists does not bring an intentional tort claim.  It alleges only breach of contract.  As noted above, courts generally apply the continuing relationships test, not the harmful effects test, to cases involving contractual relationships.[73]  ERC Specialists relies on *XMission, L.C. v. PureHealth Research*[74] and *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*[75] in arguing the harmful effects test applies, but neither case involved contract claims.  In *XMission*, a Utah internet service provider sued an out-of-state company in the District of Utah, claiming the company sent spam emails to its Utah customers in violation of a federal statute.[76]  Applying the harmful effects test, the Tenth Circuit held that "knowingly sending newsletter emails to customers residing in

---

[71] (*Id.*)

[72] (*Id.*)

[73] *Old Republic*, 877 F.3d at 905.

[74] 105 F.4th 1300 (10th Cir. 2024).

[75] 514 F.3d 1063 (10th Cir. 2008).

[76] *See* 105 F.4th at 1304–05.

Utah" qualified as intentional action expressly aimed at the forum state—satisfying the purposeful direction requirement for specific jurisdiction.[77]  And in *Dudnikov*, sellers on an online auction website alleged the defendants knowingly made an erroneous report of copyright infringement to the website, resulting in suspension of the auction and harm to the plaintiffs' Colorado business.[78]  The Tenth Circuit held the harmful effects test was met where the defendants' "express aim in acting was to halt a Colorado-based sale by a Colorado resident."[79]  Notably, neither *XMission* nor *Dudnikov* involved a claim for breach of contract.  Neither case supports the premise that the harmful effects test applies to a contract case like this one.

ERC Specialists also has not demonstrated that simply because "the internet is involved," this case falls within the harmful effects framework.[80]  To be sure, as the *XMission* court observed, the harmful effects test has been applied to cases "involving the Internet."[81]  But none of these cases involved a claim for breach of contract.  Indeed, as the Tenth Circuit has noted, cases applying the harmful effect test to internet

---

[77] *Id.* at 1311–12.

[78] 514 F.3d at 1067, 1073.

[79] *Id.* at 1076.

[80] (Opp'n 9, Doc. No. 15.)

[81] *XMission*, 105 F.4th at 1309 (citation omitted).  In making this observation, the court cited *Dudnikov* and other cases involving spam emails, defamatory blog posts, and unauthorized use of email servers.  *See XMission L.C. v. Fluent LLC*, 955 F.3d 833, 843 (10th Cir. 2020) (spam emails); *Shrader v. Biddinger*, 633 F.3d 1235, 1240–41 (10th Cir. 2011) (defamatory blog posts); *Intercon, Inc., v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247–48 (10th Cir. 2000) (unauthorized use of email servers).

activities "usually involve claims like defamation and trademark infringement, which are generally considered *intentional* torts."[82]  Here, ERC Specialists relies on internet activity related solely to the contractual relationship: it asserts Schoolmates filled out a questionnaire on its website and used the internet to sign the contract and submit documents.[83]  ERC Specialists fails to cite any authority applying the harmful effects test to a breach of contract claim merely because the parties used the internet to enter into the contract and communicate about it.

Moreover, ERC Specialists fails to cite any case finding failure to make a payment under a contract qualifies as intentional action expressly aimed at the forum state, for purposes of satisfying the harmful effects test.  Under ERC Specialists' theory, personal jurisdiction could be established in virtually any case involving an allegation that a defendant contracted with and failed to pay a plaintiff located in another state— even if the defendant had no other contacts with the forum state.  This runs afoul of both the Supreme Court's pronouncement that "the plaintiff cannot be the only link between the defendant and the forum"[84] and the notion that a contract alone is insufficient to establish personal jurisdiction.[85]  For these reasons, ERC Specialists has not established personal jurisdiction under the harmful effects framework.

---

[82] *Old Republic*, 877 F.3d at 908.

[83] (*See* Opp'n 9, Doc. No. 15.)

[84] *Walden*, 571 U.S. at 285; *see also Old Republic*, 877 F.3d at 907 (quoting this statement in discussing the harmful effects framework).

[85] *See Burger King*, 471 U.S. at 478.

* * *

One final note: as an alternative to dismissal, Schoolmates asks for the case to be transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1406—the statute permitting transfer to cure improper venue.[86]  But where personal jurisdiction is lacking, Schoolmates' claims of improper venue need not be addressed.  Likewise, it is unnecessary to address Schoolmates' alternative request to transfer the case for improper venue.  In short, it is a plaintiff's burden to prove grounds for a transfer instead of dismissal where personal jurisdiction is lacking.[87]  But neither party requests transfer under 28 U.S.C. § 1631, the statute permitting such transfers "in the interest of justice."[88]  Where ERC Specialists does not request a transfer or address the requirements for a transfer under § 1631, it has not demonstrated transfer rather than dismissal is appropriate here.

---

[86] (Mot. 7–8, Doc. No. 9.)

[87] *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 108 (10th Cir. 2012) (unpublished).

[88] 28 U.S.C. § 1631; *see also Grynberg*, 490 F. App'x at 105 (noting the court must "first satisfy itself that the proposed transferee court has personal jurisdiction over the parties," and listing factors relevant to the interest-of-justice determination).

**CONCLUSION**

Because ERC Specialists fails to establish minimum contacts sufficient to

support personal jurisdiction over Schoolmates, Schoolmates' motion to dismiss[89] is

granted.  This action is dismissed without prejudice for lack of jurisdiction.

DATED this 26th day of August, 2025.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[89] (Doc. No. 9.)