**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 13, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ERC SPECIALISTS, LLC, a Utah limited liability company,

Plaintiff - Appellant,

v.

SCHOOLMATES, NFP,

Defendant - Appellee.

No. 25-4116
(D.C. No. 2:24-CV-00727-DAO)
(D. Utah)

---

**ORDER AND JUDGMENT***

---

Before **TYMKOVICH**, **BACHARACH**, and **FEDERICO**, Circuit Judges.

---

This appeal arises from an archetypical fact pattern. ERC Specialists, LLC, contracted to provide consulting services to Schoolmates, NFP. ERC Specialists provided the contracted-for services. When the bill came due for ERC Specialists' services, Schoolmates failed to pay. So, ERC Specialists

---

* After examining the brief and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

sued. But it could find no recompense. The District of Utah, sitting in diversity, held that exercise of personal jurisdiction over Schoolmates would violate due process and dismissed the case. Stymied but persistent, ERC Specialists now appeals to this court.

Schoolmates has indicated no intent to participate in the appeal, and its lawyer from the trial court proceedings represented that the entity is now defunct. Nonetheless, because ERC Specialists is aggrieved by the judgment below, we have jurisdiction to hear its appeal. A careful examination of the record, the district court order, and caselaw reveals that Schoolmates did not have sufficient minimum contacts with the state of Utah to allow for the exercise of personal jurisdiction by a federal court sitting in that state. We affirm.

**I**

ERC Specialists is a Utah company that helped client companies apply for a tax credit created during the coronavirus pandemic. Schoolmates was, at that time, an Illinois not for profit corporation that managed a charter school in Chicago. The tax credit in question, known as the Employee Retention Credit, was available in connection with certain employee wages paid from March 2020 through the end of December 2021. *Employee Retention Credit*, IRS (updated June 12, 2026), https://perma.cc/B8WQ-4ZV4. Although how the parties came into contact

is not clearly resolved by the record, they ultimately contracted for ERC Specialists to help Schoolmates obtain the tax credit.

Rather than providing its services in exchange for a lump sum, Schoolmates agreed to pay fifteen percent of the tax credit to ERC Specialists if it was ultimately secured. This arrangement for payment on a percentage basis was apparently ERC Specialists' regular practice. *See Tri-Cities Restoration LLC v. ERC Specialists, LLC*, No. 2:24-CV-00816-RJS-DBP, 2025 WL 2050096, at *2 (D. Utah July 22, 2025) (describing same fee arrangement); *ERC Specialists, LLC v. Boring Co.*, No. 2:25-CV-00387-DBB-CMR, 2025 WL 2480719, at *1 (D. Utah Aug. 28, 2025) (same). The parties' agreement also provided that if the IRS declined to issue a tax credit, ERC Specialists would receive no fee. However, if the IRS were to pay the tax credit and then claw back any portion, ERC Specialists would nonetheless retain the entirety of its fee already collected. Additionally, the parties agreed that they would request the IRS send checks containing any credit funds to a third-party escrow agent, rather than to Schoolmates' business address.

Despite these contractual agreements, no checks were mailed to the escrow agent, and ERC Specialists was not paid in the anticipated course of business. Instead, ERC Specialists alleges, Schoolmates withheld all the nearly $125,000 due for its fee.

As a result, ERC Specialists filed a complaint in Utah state court alleging breach of contract and, in the alternative, unjust enrichment. The state-court complaint sought damages in the amount of the withheld fees as well as interest, costs, and attorneys' fees. Schoolmates thereafter filed a notice of removal in the District of Utah on the basis of the parties' diversity of citizenship. *See* 28 U.S.C. §§ 1332, 1441, and 1446. ERC Specialists did not seek a remand to state court.

Now in federal court, Schoolmates filed a motion to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). ERC Specialists opposed this motion and filed in response an affidavit by its general counsel as well as the parties' written agreement. Schoolmates filed a reply brief supported by its own affidavit and a set of emails pertaining to the parties' agreement. The district court heard argument on the motion but did not conduct an evidentiary hearing. It looked to the complaint and the parties' affidavits and determined that ERC Specialists had not carried its burden to establish the existence of personal jurisdiction.

ERC Specialists timely appealed to this court. After ERC Specialists had filed its notice of appeal – but before filing its Opening Brief – Schoolmates' attorney moved to withdraw from the case. This court denied the motion without prejudice. In a renewed motion, counsel elaborated that her client was "no longer conducting any business, does not have any

employees, and [] all of the decisionmakers for the entity have retired and/or resigned." Doc. 37 at 1–2. She stated that "to the best of her knowledge, Schoolmates does not intend to participate in the appeal." *Id.* at 2. This court granted the renewed motion and permitted the attorney to withdraw.

This appeal, then, has only one participating party – ERC Specialists. But because that party is the appellant, "aggrieved by the order from which appeal is taken," this court may adjudicate the matter consistent with Article III's case-or-controversy requirement. *See Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1274 (10th Cir. 2011) (quoting *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1159 (10th Cir. 2011)). Our review, though, finds no error in the district court's judgment. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## II

To resolve this dispute over personal jurisdiction, three questions must be addressed. First, there is the threshold question of which facts may be considered. ERC Specialists argues the district court erred by declining to consider an attorney's representation made in its briefing. But the district court made no such error. After resolving that issue and therefore determining the relevant universe of facts, we must decide whether those facts will show minimum contacts sufficient to support an exercise of personal jurisdiction under a traditional analysis. Below, we hold that due

process would not be satisfied. So, finally, our analysis will turn to the last question: whether the purported injury stemming from contractual breach would itself suffice to establish personal jurisdiction. We hold that it does not.

**A**

Before partaking in this foreshadowed analysis, though, we set out the relevant principles of law. Because this appeal arises from the dismissal of a complaint for lack of personal jurisdiction, de novo review applies. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). ERC Specialists, as the plaintiff, has the burden under Federal Rule of Civil Procedure 12(b)(2) to establish jurisdiction. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004). Where, as here, the district court did not hold an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction" to be entitled to reversal. *Id.* (quoting *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999)). "The plaintiff may carry this burden 'by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant.'" *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010) (quoting *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007)). Once a prima facie showing has been made, the defendant may still prevail by

demonstrating that "the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quotation omitted).

**B**

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). So, in determining the existence of personal jurisdiction, courts look to the forum state's "long-arm statute" authorizing service over non-resident defendants. *See, e.g.*, *id.* The exercise of personal jurisdiction must also be consistent with the requirements of the Constitution. Thus, in addition to the statutory inquiry, courts generally ask whether the exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

Because this suit was filed in the District of Utah, the inquiry becomes simpler. That is because "Utah authorizes its courts to exercise jurisdiction over 'nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution.'" *XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1307 (10th Cir. 2024) (quoting Utah Code Ann. § 78B-3-201(3)). Ergo, the intricacies of the Utah long-arm statute have no bearing on the outcome. Instead, our inquiry "collapses" into only one question: would the exercise

of personal jurisdiction over Schoolmates violate due process? *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020).

The Supreme Court has recognized two different theories by which personal jurisdiction may be exercised without a party's consent and consistent with due process. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). General personal jurisdiction is available in a forum where a defendant is "essentially at home" and allows for disposition of "any and all claims" against that defendant. *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific personal jurisdiction, on the other hand, applies to defendants "less intimately connected" with the forum state and may be exercised "only as to a narrower class of claims." *Id.* at 359. Under either theory, defendants "must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Here, ERC Specialists alleges only one theory, specific personal jurisdiction.

To determine whether the exercise of specific personal jurisdiction is appropriate, courts look to see if defendants have "reached out beyond" their home jurisdiction by undertaking some act to "purposefully avail[]

[themselves] of the privilege of conducting activities within the forum [s]tate." *Ford Motor Co.*, 592 U.S. at 359 (first quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014); and then quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). If defendants have done so, and the claims at issue "arise out of or relate to" the defendant's activities in the forum state, then specific personal jurisdiction may be exercised. *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal.,* 582 U.S. 255, 262 (2017)).

**III**

**A**

Because the personal jurisdiction analysis is dependent on Schoolmates' contacts with the forum state, we must determine at the threshold which facts are appropriate for consideration. On appeal, ERC Specialists argues that the district court erred by declining to credit a factual representation made in its opposition brief, that Schoolmates had executed an IRS form granting power of attorney to ERC Specialists. But that form was never referenced in the complaint, filed as an attachment to any briefing, or referenced in ERC Specialists' supporting affidavit. It was instead referenced in the opposition to the motion to dismiss, where its existence was alleged as a "relevant fact[]." Aplt. App. at 63 (capitalization omitted). The district court declined to credit this representation.

The district court was right to do so. When reviewing for a prima facie demonstration that personal jurisdiction may be exercised, courts "resolve all factual disputes in favor of the plaintiff." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). But there must be a fact in dispute. And to bring a fact into dispute, a plaintiff must present "either uncontested allegations in its complaint or evidence in the form of an affidavit or declaration." *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 965 (10th Cir. 2022). An attorney's representation in an unsworn brief does not fit the bill. And, in any event, the existence of the limited grant of power of attorney would make no difference to the outcome of this appeal.

**B**

Having a view of the relevant facts, the question becomes whether those facts are sufficient to demonstrate a prima facie case for the existence of minimum contacts. The test has two requirements. First, "the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (quotation omitted). Second, the claims at issue must "arise out of or relate to those activities." *PureHealth Rsch.*, 105 F.4th at 1308 (quoting *Fluent LLC*, 955 F.3d at 840).

Much of the doctrinal work necessary to apply this standard has already been done. In *Old Republic Insurance Co. v. Continental Motors,*

*Inc.*, this court explained that "[t]he typical purposeful direction analysis looks to the out-of-state defendant's 'continuing relationships and obligations with citizens of the forum state.'" 877 F.3d at 905 (alteration adopted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)). Where the dispute arises from the parties' contract:

> A defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." Instead, we must evaluate the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing in determining whether the defendant purposefully established minimum contacts within the forum.

*Id.* (internal citations omitted and alterations adopted) (first quoting *Walden*, 571 U.S. at 286; and then quoting *Burger King*, 471 U.S. at 479).

There are several cases from this court that further elucidate factual considerations relevant in applying the standard. From those cases, certain general principles can be gleaned. In *Dental Dynamics, LLC v. Jolly Dental Group, LLC*, an Oklahoma broker of dental equipment sued an Arkansas dental practice. 946 F.3d 1223, 1226–27 (10th Cir. 2020). There, the parties had engaged in three business transactions over the course of nine years. *Id.* at 1230. None of the contracts had been negotiated or executed in person. *Id.* And all the contracts – including the one that gave rise to the lawsuit – involved only "the isolated sale or prospective sale" of a good "without any long-term or continuing obligations involving" the forum state. *Id.* This

court held that the Arkansas dental practice had not purposefully directed efforts toward Oklahoma. *Id.* Thus, personal jurisdiction could not be exercised in an Oklahoma court over the dental practice.

*Soma Medical International v. Standard Chartered Bank* also helps to inform the present dispute. 196 F.3d 1292. There, a Utah resident opened an account with a bank in Hong Kong. *Id.* at 1294. The bank mailed to Utah a signature card, two more letters requiring the Utahn's signature, and fourteen other written communications. *Id.* at 1298. The bank also created and maintained internal records and documents relevant to the Utah resident. *Id.* Nonetheless, because there was no demonstration that the bank "solicited" the client's business and there were only a "limited number of . . . communications" with the Utah resident, not numbering in the "hundreds," there were insufficient indicia of purposeful availment. *Id.* at 1299 (quotation omitted). This court held that personal jurisdiction could not be exercised in Utah over the bank.

On the other hand, in *Pro Axess, Inc. v. Orlux Distribution, Inc.*, this court held that specific personal jurisdiction could be exercised in Utah over a French company. 428 F.3d 1270, 1274 (10th Cir. 2005). There, the plaintiff was a Utah corporation that the French company had solicited for its business relationships with manufacturers in Asia. *Id.* at 1277. The parties signed only a single contract, but its fulfillment "required a continuing

relationship based on the provision of services." *Id.* In particular, the contract required the Utah company to: choose a manufacturer, arrange for handmade models to be made into prototypes, arrange for the details of the product's manufacture, arrange for inspection of the final product, invoice and coordinate the manufacturing process, and arrange for shipping of the product from Asia to France. *Id.* Throughout this process, the French company "exchanged numerous faxes, letters, and phone calls with [the Utah company] about the order itself and the potential for modifications to the order." *Id.* at 1278. Because those contacts occurred while the parties "were building a business relationship, maintaining that relationship, and attempting to salvage that relationship," we deemed them to have a "quality" worthy of weight in the due process analysis. *Id.* at 1278 n.5.

Here, there is some degree of factual dispute as to how the parties first encountered one another. To resolve this issue, a court should look to the operative complaint as well as any affidavits filed. *Eighteen Seventy, LP*, 32 F.4th at 965. Both parties submitted factual affidavits in the district court. *See* Aplt. App. at 95 (ERC Specialists affidavit); *id.* at 114 (Schoolmates affidavit). Where there are inconsistencies in these documents, a court should "resolve all factual disputes in favor of the plaintiff." *AST Sports Sci.*, 514 F.3d at 1057.

From this universe of documents and construing the facts in favor of ERC Specialists, we accept certain factual findings as true. The relevant contractual documents were not signed in person in Utah; indeed, no Schoolmates employee ever entered Utah. ERC Specialists did not initiate the business relationship. And Schoolmates contacted ERC Specialists "directly" through its website. Additionally, ERC Specialists alleges that it "received numerous documents from Schoolmates" for the purpose of filing for the tax credit. We will also take this factual allegation as true. However, to the extent that ERC Specialists would have us grant the conclusory term "numerous" legal significance, we will not go so far.

ERC Specialists also alleges that the agreement at issue here pertained to a tax credit that is no longer available. And the documents memorializing the parties' agreement – which are incorporated into the complaint by reference – show that the parties signed a form contract that contains Schoolmates' name only one time. *See* Aplt. App. at 76 (defining Schoolmates as "client" or "the client"). The language of the contract thus offers no indication that the parties engaged in significant back-and-forth negotiation to commence their business relationship. And although the contract has a choice of law provision selecting Utah law, it does not have a forum selection clause. It also provides that the parties would ask the IRS to mail checks to an escrow agent in Utah. The tax credit, according to the

paperwork "may be represented in 1–6 individual checks from the IRS." *Id.* at 90.

Neither the complaint nor ERC Specialists' affidavit allege a specific number of contacts between the parties. To the extent the affidavit bears on the quality of contacts, it indicates that they were not of the type discussed in *Pro Axess*, where the parties built, maintained, and attempted to salvage a business relationship that involved the multistep process of prototyping and manufacturing a product for commercial market across international borders. *See* 428 F.3d at 1277–78 & n.5. Instead, Schoolmates contacted ERC Specialists through its website, executed a form contract on ERC Specialists' letterhead, and provided documents to ERC Specialists. These are the type of limited contacts that appear in *Soma Medical*, where personal jurisdiction could not be exercised. And the parties could not have contemplated future dealings: the only service available from ERC Specialists was assistance with a time-limited tax credit. The contract here encompassed the entirety of the services that might be available. Thus, the parties could not have contemplated "any long-term or continuing obligations involving" the forum state. *Dental Dynamics*, 946 F.3d at 1230.

So, although the contact via ERC Specialists' website provides "some evidence suggesting purposeful availment," *Pro Axess*, 428 F.3d at 1277 (quotation omitted), and the Utah choice of law provision is at least

"relevant in assessing the parties' relationship and expectations," *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1282 (10th Cir. 2016) (quoting *Far W. Cap., Inc. v. Towne*, 46 F.3d 1071, 1080 n.7 (10th Cir. 1995)), these facts are not sufficient on their own. Rather, the transaction was "a discrete occurrence." *Dental Dynamics*, 946 F.3d at 1230. To the extent that the relationship with a third-party escrow company is relevant, we give it little weight. The contract documents provide that the third-party should receive between one and six checks intended for Schoolmates. The pleadings and affidavits do not indicate that any of the checks were received by the escrow agent or that any fee was ultimately paid to ERC Specialists. Even if the checks had been sent to the escrow company, as anticipated, these would at most add a "limited number of . . . communications," not numbering in the "hundreds," as might be helpful for ERC Specialists' jurisdictional case. *Soma Med.*, 196 F.3d at 1299 (quotation omitted).

This case, then, is far more similar to *Soma Medical* and *Dental Dynamics* than *Pro Axess*. There is little to show that Schoolmates "purposefully directed" its activities at Utah residents such that ERC Specialists' claims might "arise out of or relate to" those activities. *PureHealth Rsch.*, 105 F.4th at 1308 (quotation omitted). ERC Specialists has not carried its burden to demonstrate a prima facie case that minimum

contacts exist to support the District of Utah's exercise of personal jurisdiction over Schoolmates. The district court did not err in so holding.

**C**

ERC Specialists, though, argues in the alternative that it can prove personal jurisdiction because Schoolmates undertook activities that went on to cause harmful effects in Utah. And it is true that we have applied in some cases such a test, predicated on *Calder v. Jones*, 465 U.S. 783, 789 (1984). We have interpreted this precedent to allow the exercise of personal jurisdiction where there is: "(a) an intentional action . . ., that was (b) expressly aimed at the forum state . . ., with (c) knowledge that the brunt of the injury would be felt in the forum state[.]" *Dudnikov*, 514 F.3d 1072.

More recently, we have noted that when "courts have applied derivatives of the *Calder* effects test," they usually do so in cases that "involve claims like defamation and trademark infringement, which are generally considered *intentional* torts." *Old Republic Ins. Co.*, 877 F.3d at 908. Indeed, the Supreme Court "suggested" that the connection to the forum state was "'largely a function'" of the libel tort at issue in *Calder*, which involved publication of the offending material in the forum state. *Old Republic Ins. Co.*, 877 F.3d at 908 (quoting *Walden*, 571 U.S. at 287). For this reason, "the defendants' intentional tort [in *Calder*] actually occurred in California." *Id.* (internal citation omitted). So, although this test may be

applicable in the "internet context," the existence of minimum contacts is still predicated on "indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Id.* (quoting *Shrader*, 633 F.3d at 1241). For ERC Specialists to prevail, this rule would need to be expanded to apply in the breach of contract context.

But it is hard to see how such an expansion could be squared with the fundamental principle that "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. And, "[r]egardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum [s]tate." *Id.* at 290. For a contractual dispute, then, it is unclear what work the effects test could do here. It seems obvious that any breach of contract will necessarily result in effects that occur in the counterparty's home jurisdiction. So, in a dispute arising from contract, the mere location of injury will not improve the plaintiff's showing on the jurisdictionally relevant issue: whether there is something "more than simply harm suffered by a plaintiff who resides in the forum state." *Old Republic Ins. Co.*, 877 F.3d at 917. Application of the effects test is not called for by our precedent and would not change the analysis here.

## IV

Because we do not find the existence of minimum contacts, there is no need to determine whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. The judgment of the district court is AFFIRMED.

Entered for the Court

Richard E.N. Federico
Circuit Judge

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

July 13, 2026

Jordan T. Greenburg
Davis Pope
Scarlet R. Smith
Strong & Hanni
102 South 200 East, Suite 800
Salt Lake City, UT 84111

**RE: 25-4116, ERC Specialists v. Schoolmates**
Dist/Ag docket: 2:24-CV-00727-DAO

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(d)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rule 40 and 10th Cir. R. 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc: Schoolmates, NFP

CMW/sls